In re Richard NUNEZ, Debtor.

**United States of America, Internal Revenue Service, Appellant,**

v.

**Richard Nunez, Appellee.**

BAP No. NC–98–1228–MeRyK
Bankruptcy No. 97–58034–JRG–7
Adversary No. 97–5494–JRG

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 22, 1998.

Decided Jan. 6, 1999.

Thomas F. Carlucci, Assistant U.S. Attorney, San Francisco, CA, for U.S.A., Internal Revenue Service.

Michael S. Walsh, San Jose, CA, for Richard Nunez.

Before MEYERS, RYAN and KLEIN, Bankruptcy Judges.

## *OPINION*

MEYERS, Bankruptcy Judge.

### I

The debtor and the United States Internal Revenue Service ("IRS") filed cross-motions for summary judgment regarding the dischargeability of certain tax debt. The issue was whether forms filed by the debtor after the IRS had independently calculated the debtor's tax liability were "returns" for purposes of Bankruptcy Code Section 523(a)(1)(B). The bankruptcy court ruled in favor of the debtor.

We AFFIRM.

### II

### · FACTS

The debtor, Richard Nunez ("Debtor"), failed to file federal tax returns for the years 1985–87 and 1989 [1]. As a result, the

---

**1.** The Debtor failed to file returns for other years also, but the IRS only contests dis-

chargeability of tax debts arising from the stated years.

IRS prepared substitute returns based on its determinations of the Debtor's income and deductions. Between November 1990 and April 1993, the IRS assessed the taxes it determined were owed.

In 1994, the Debtor submitted Forms 1040 ("Forms") to the IRS for the subject years. The Forms reflected the same wage income as the substitute returns previously made by the IRS.

The Debtor made an Offer of Compromise but it was rejected on procedural grounds, apparently regarding whether an original or photocopy was supplied to the IRS. A second Offer of Compromise was made. The Debtor asserts the IRS did not respond to that offer.

The Debtor filed for Chapter 7 bankruptcy relief on September 24, 1997. On October 20, 1997, the Debtor filed a complaint to have his tax debt for the years 1984–93 declared dischargeable. The parties then filed cross motions for summary judgment.

The IRS contended that Section 523(a)(1)(B)(i)[2] excepted from discharge tax liabilities with respect to which a return was not filed. It argued that the Forms submitted by the Debtor did not constitute tax returns for purposes of that Section, and therefore, that tax debt could not be discharged. It also maintained that the Debtor merely copied the income figures already generated by the IRS, that the Forms served no purpose, and certainly they did not serve the purpose intended by the self-reporting mechanisms of the Internal Revenue Code ("IRC"). The IRS also argued that the returns had to be filed in good faith to be considered a return, citing *Germantown Trust Co. v. Comm'r*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940).

The Debtor argued that Section 523(a)(1)(B) did not include an exception based on whether a return was filed before or after an assessment by the IRS and did not place a time limit on when the returns are to be filed. The only time limit, he argued, was the two-year waiting period between filing the return and seeking a discharge specifically stated in the statute. The Debtor also contended that the *Germantown* reasoning was inapplicable because in that case the issue was whether an incorrect form could still satisfy the return requirement.

The Debtor provided a declaration stating that he decided to file returns in response to an amnesty program offered by the IRS and had consulted both an attorney and an accountant to prepare the taxes. Indeed, all of the Forms in question contain a preparer's signature.

The bankruptcy court ruled that the Debtor's Forms were tax returns. It examined the issue of whether the Debtor made an honest and reasonable attempt to satisfy the tax requirements, and concluded that there was no evidence that the Debtor "did something wrong under that prong of the test." The court rejected the argument that the mere passage of time could support a finding of bad faith, stating that Congress could have included such a time limit if it had wanted to.

## III

### STANDARD OF REVIEW

■ The Panel reviews the granting of summary judgment *de novo*. *In re Green*, 198 B.R. 564, 566 (9th Cir. BAP 1996).

---

**2.** Section 523(a)(1) provides that a discharge under Section 727 does not discharge an individual debtor from a debt for a tax:

    (B) with respect to which a return, if required—

      (i) was not filed; or

      (ii) was filed after the date on which such return was last due, under applicable law

or under any extension, and after two years before the date of the filing of the petition; or

    (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

## IV

### DISCUSSION

The IRS makes two arguments. The first is that "[o]nce the IRS makes an involuntary assessment against a non-filing taxpayer, such as the debtor here, the taxpayer cannot claim that he has filed a return simply by tendering a standard form that reflects the IRS's prior determinations." Basically, it contends that once the IRS has made an assessment on its own and without the assistance of the taxpayer, tax forms such as what the Debtor filed here no longer qualify as returns because they do not serve the purpose for which they were intended, that is, providing the IRS with the information necessary to calculate the tax due. The IRS contends that "a return is not just a piece of paper but is also the provision of information in a manner that implements the self-assessment system."

The second argument is that the Forms were not returns because they did not constitute an honest and reasonable attempt by the Debtor to satisfy the tax laws. Some courts have included this requirement within their definition of a return. The IRS points to the following facts as allegedly supporting a finding of bad faith: the Forms were nine years late; there was a total of nine years of unfiled returns; the Debtor did not attempt to pay any amount of the tax liability; and, according to the IRS, the bankruptcy case was filed solely for the purpose of discharging the tax debt.

A. *Assessment by IRS Does Not Bar Dischargeability*

■ ·We recognize that there is recent authority supporting the IRS's position. *See In re Mickens,* 215 B.R. 693 (N.Ohio), *aff'd* 214 B.R. 976 (N.D.Ohio 1997). ·The district court in *Mickens* agreed with the IRS that where a document is a legal nullity it cannot satisfy the definition of a return. 214 B.R. at 978. The court stated that the Form 1040 filed by the debtor after the IRS had already prepared a substitute return and assessed the tax liability had no legal effect. *Id.* The Form 1040 did not allow tax liability to be assessed, it did not affect the amount of the tax liability, it did not trigger the assessment time period under the IRC, or affect the delinquency time period for purposes of calculating civil penalties, and it could not purge the debtor of tax fraud or affect his criminal liability for failure to ·file a return under IRC 7203. *Id.* The court also noted that the debtor did not contest the argument that the Forms were a legal nullity and did not suggest any way that the Forms could have any legal effect. *Id.*

Several courts have rejected this argument on the ground that it requires reading a requirement into the Bankruptcy Code that is not explicitly there. In other words, Section 523(a)(1)(B) does not state that the return must be filed prior to an assessment by the IRS in order to be effective for dischargeability purposes. *In re Savage,* 218 B.R. 126, 132 (10th Cir. BAP 1998); *In re Hindenlang,* 205 B.R. 874, 877–78 (S.Ohio), *aff'd,* 214 B.R. 847 (S.D.Ohio 1997). The Panel in *Savage* also stated that this reading would lead to an absurd result. "Effectively, a debtor, for whom the IRS prepares substitute returns, could never discharge taxes. We find nothing in the Bankruptcy Code that would lead us to adopt the IRS's argument." 218 B.R. at 132.

The Panel has held that Section 523(a)(1)(B) can be satisfied, even after substitute returns are prepared by the IRS and an assessment is made, if the debtor cooperates with the IRS and takes actions that amount to adopting the substitute returns. *In re Hatton,* 216 B.R. 278, 282 (9th Cir. BAP 1997). In *Hatton,* the debtor acknowledged that he owed the taxes and was willing to sign the substitute returns. Eventually he entered into an installment payment agreement. We held that the substitute returns, when taken along with the signed installment agreement, qualified as returns for purposes of

Section 523(a)(1)(B). Under *Hatton* then, the preparation of substitute returns and assessment by the IRS does not act as a complete bar to efforts by the Debtor to file a return. That is, the Debtor can still take actions which will satisfy Section 523(a)(1)(B).

■ We also agree with the reasoning of the bankruptcy court, and the other courts that have so held, that Congress could have conditioned discharge of tax debt on whether a return was filed prior to an assessment. As correctly noted by the court, Congress used assessment as a trigger for other time periods in the Code, for example, the priority qualifications found in Section 507(a)(8)(A)(ii). When Congress includes particular language in one section of the Code, but omits it in another, it is presumed to have acted intentionally and purposely. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). We will not read into Section 523(a)(1)(B) the requirement that a debtor must have filed a return prior to an assessment by the IRS. Accordingly, the IRS's first argument is rejected.

### B. *"Good Faith" Should Be Narrowly Construed*

This takes us to the IRS's argument that the Forms should not be considered returns because they did not represent an honest and reasonable attempt by the Debtor to satisfy the tax laws. The bankruptcy court ruled that summary judgment was appropriate because the IRS failed to present any evidence demonstrating that the Forms were filed in bad faith.

The requirement that a debtor must be acting in good faith in filing a document purporting to be a tax return arises from *Germantown Trust Co. v. Comm'r, supra.*[3] In that case, the issue was whether the petitioner, a trust company, had filed the appropriate form. The company filed a fiduciary tax form. The IRS argued that the entity was required to file a corporate return and it prepared substitute corporate returns. The Supreme Court stated that the entity involved was a fiduciary, had filed a fiduciary tax return and the form "contained all of the data from which a tax could be computed and assessed although it did not purport to state any amount due as tax." 309 U.S. at 308, 60 S.Ct. 566. It held that where an entity, in good faith, makes what it deems to be an appropriate return and discloses all of the data from which the tax can be computed, then the form shall be considered a return, even if it is later determined that the entity failed to file the proper form or filed an incomplete form. *Id.* at 309–10, 60 S.Ct. 566.

■ The Supreme Court's focus was on whether the entity before it made a good faith effort to file the form it believed to be appropriate. From this, courts have constructed a four-prong test for determining whether a document will be treated as a return. In *Hatton*, we set forth that test as follows: "(1) there must be sufficient data to calculate a tax liability; (2) the document must purport to be a return; (3) an honest and reasonable attempt must be made to satisfy the requirements of the tax laws; and (4) the taxpayer must execute the return under penalty of perjury."

---

**3.** The relevant portion of that opinion is as follows:

The respondent's contention is that where a fiduciary, in good faith, makes what it deems the appropriate return, which discloses all of the data from which the tax, treated as one imposed upon an association (classified as a corporation under the statute), can be computed, such a return is to be deemed no return. We think this view inadmissible.

It cannot be said that the petitioner, whether treated as a corporation or not, made no return of the tax imposed by the statute. Its return may have been incomplete in that it failed to compute a tax, but this defect falls short of rendering it no return whatever. 304 U.S. at 309–10, 58 S.Ct. 913.

*Hatton,* 216 B.R. at 282 (citing *Beard v. Commissioner of Internal Revenue,* 82 T.C. 766, 777, 1984 WL 15573 (1984), *aff'd* 793 F.2d 139 (6th Cir.1986)).

◼ It is the third prong that is generally in dispute, as is the case here. Recently, the Bankruptcy Appellate Panel for the Tenth Circuit stated that this prong requires that the document "appear on its face to constitute an honest and genuine endeavor to satisfy the law." *Savage,* 218 B.R. at 132. This is a subtle, yet important, restatement of the requirement we set forth in *Hatton.* Under *Hatton,* it can be argued that the court is called on to make a broad, in-depth inquiry into the debtor's compliance with all tax laws. So, for example, the IRS contends that the Debtor's failure to file tax returns for nine years is relevant to the inquiry of whether he filed the Forms in good faith. Indeed, courts have ruled that the debtor cannot discharge a tax debt on the basis of actions unrelated to, and taken long before, the filing of the document in question. *See Mickens,* 215 B.R. at 696. Pursuant to *Savage,* however, a court is asked only to determine if the document in question, "on its face," was filed in good faith. We believe this is more appropriate and adopt the test as set forth in *Savage.*

◼ We believe that the case law applying a good faith standard and the plain language of the statute are best reconciled by giving good faith a narrow scope. This is consistent with the general rule that exceptions to discharge are to be narrowly construed. *In re Savage,* 218 B.R. at 130.

Additionally, this is appropriate in light of Section 523(a)(1)(C). That Section excepts from the discharge a debt for a tax "with respect to which the debtor has made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." In its second argument, the IRS, in raising the issue of good faith, essentially is asking the Panel to determine that the Debtor has attempted to evade paying the tax debt in question.

For example, the IRS alleges that the Debtor simply replicated the income data listed on the substitute returns, and that he filed for bankruptcy solely to avoid paying the tax debt. They also point to the number of years the Debtor failed to file a return or pay taxes as indicia of bad faith. Finally, they allege that he did not make any attempt to pay the taxes due. These facts and allegations are relevant to a determination under Section 523(a)(1)(C), not Section 523(a)(1)(B).

◼ The good faith inquiry under Section 523(a)(1)(B) should focus on the debtor's intent at the time the returns are filed. This keeps the inquiry relevant to Section 523(a)(1)(B). A focus on the delay in filing, or the number of missed years is relevant instead to an inquiry under Section 523(a)(1)(C). *See, e.g., In re McGrath,* 217 B.R. 389, 393–94 (N.D.N.Y.1997) (forms filed after assessment were returns for purposes of Section 523(a)(1)(B); but debt nondischargeable pursuant to Section 523(a)(1)(C) because debtor filed false W–4 withholding forms, failed to timely file Forms 1040 and failed to pay tax obligations when due). The application of that Section has not been raised in this adversary proceeding.

◼ Additionally, the issue of good faith generally should arise only where the creditor contends that the form of the document is not proper. So, for example, the good faith inquiry was relevant in *Hatton* because the debtor had not filed a tax return on an approved form and the only document signed by the debtor was a payment agreement. Again, any broader inquiry is more appropriate under Section 523(a)(1)(C).

◼ The IRS has the ultimate burden of proof as to whether a return has been filed. *In re Hatton,* 216 B.R. at 281. It has failed to present evidence raising a genuine dispute as to a material fact on the issue of good faith, even under the broad scope argued for by the IRS.

■ The Debtor's declaration is uncontroverted. He responded to an amnesty program and enlisted the help of both an attorney and an accountant. An accountant signed off as preparer on all the Forms. The IRS did not depose the Debtor or the accountant and presents no evidence that the Debtor simply copied the data from the IRS substitute forms. Three years passed between the filing of the Forms and the bankruptcy filing. The failure to file returns for numerous years does not relate to the issue of the Debtor's good faith at the time that the Forms were prepared and submitted. On their face, the Forms were proper and were complete. Nothing in the record suggests otherwise.

## V

### CONCLUSION

Section 523(a)(1)(B) excepts from discharge tax debts where a return has not been filed. The IRS argues for an absolute rule that where it prepares substitute returns and assesses the taxes due, any document subsequently filed by the debtor cannot be deemed a return. The Panel rejects that rule as contrary to the strict language of the statute.

The IRS also argues that the Forms were not prepared in good faith. We question the applicability of that requirement to these facts. In any case, we agree with the bankruptcy court that the IRS failed to provide any evidence suggesting that there is a genuine dispute as to a material fact on this issue.

AFFIRMED.