**In re John P. SGARLAT, Debtor.**

**John Sgarlat, Plaintiff,**

**v.**

**United States of America Internal Revenue Service, Defendant.**

**Bankruptcy No. 99–10243–8B7.**
**Adversary No. 99–577.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 2001.

Buddy D. Ford, Tampa, FL, for plaintiff.

Carol Koehler Ide, Tax Division, U.S. Department of Justice, Washington, D.C., for defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 35)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a Motion for Summary Judgment filed in the above-captioned Adversary Proceeding by

the Defendant, United States of America, Internal Revenue Service (Government). The Complaint to Determine Dischargeability of Debt was filed by John. P. Sgarlat (Debtor) pursuant to 11 U.S.C. § 523 seeking a declaratory judgment to determine the dischargeability of Debtor's tax liability for the tax years 1978 – 1980, 1982, 1983, and 1985 – 1993. In its Motion for Summary Judgment, the Government contends there are no genuine issues of material fact and that the income tax liability of John P. Sgarlat (Debtor) for the tax years of 1980 and 1986–1991 are nondischargeable as a matter of law. The Government asserts that for the years 1980 and 1986, the Debtor failed to file federal income tax returns, and for the years 1987 – 1991 the Debtor failed to file proper federal income tax returns, as defined for dischargeability purposes.

The underlying facts as they appear from the record are indeed without dispute and they are as follows. On June 22, 1999, Debtor filed his Petition for Relief under Chapter 7. On October 5, 1999, Debtor commenced this Adversary Proceeding by filing a Complaint seeking a determination that his liability for unpaid taxes for the years 1978 – 1980, 1982, 1983, and 1985–1993 is dischargeable. The Government in due course filed an Answer stating that because of alleged lack of knowledge and information, it is not in a position to form a belief as to whether those years should be excepted from the discharge (Doc. No. 12).

Prior to the duly scheduled pretrial conference, Debtor filed a Pre–Trial Statement (Doc. No. 17) narrowing the issues. It stated that the contested legal issue is whether or not taxes for the years listed were an indebtedness that may fall within an exception to discharge pursuant to 11 U.S.C. § 523, including but not limited to § 523(a)(1)(C) as a liability based on a fraudulent return or willful attempt in any manner to evade or defeat the tax.

On September 19, 2000, the Debtor filed his Motion for Summary Judgment with Memorandum of Law for all the tax years listed in the Complaint. On October 6, 2000, Government filed its Opposition to Plaintiff's Motion for Summary Judgment citing *In re Griffith*, 206 F.3d 1389 (11th Cir.2000). In its Opposition, the Government contends that Debtor's tax liabilities shall be excepted from discharge because the documents Debtor submitted to the IRS purporting to be federal income tax returns for the years 1987–1991 have no legal effect for dischargeability purposes and that the Debtor's liabilities for tax and interest for those years are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B).

After having considered Debtor's Motion, the record and the Government's Opposition to the Motion, this Court entered an Order on February 1, 2001, denying the Debtor's Motion for Summary Judgment. (Doc. No. 32) The Motion was denied because of the paucity of the evidence and insufficient record on which this Court could have based its ruling on the Debtor's Motion for Summary Judgment. Subsequently, the parties commenced extensive discovery, at the conclusion of which the Government filed its Motion for Summary Judgment, which is the matter under consideration at this time.

Government contends in its Motion that the documents Debtor submitted to the IRS purporting to be federal income tax returns for the years 1987 – 1991 have no legal effect for dischargeability purposes because they were filed after the Government already assessed the taxes for those years. Therefore, the Debtor's liabilities for tax and interest for those years are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B), citing *In re Hinden-*

*lang,* 164 F.3d 1029 (6th Cir.1999). According to the Government, in addition, the evidence demonstrates that the Debtor failed to file federal income tax returns for the years 1980 and 1986; the Debtors' liabilities for tax and interest for those years also are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B)(i).

The Government concedes that the penalties for the years involved are dischargeable. 11 U.S.C. § 523(a)(7)(B); *In re Burns,* 887 F.2d 1541 (11th Cir.1989) (holding that tax penalty is discharged if transaction or event giving rise to penalty occurred more than three years prior to filing of bankruptcy petition); *Wright v United States (In re Wright),* 244 B.R. 451, 457–58 (Bankr.N.D.Cal.2000).

In support of its Motion the Government relies on copies of the IRS Transcripts (Gov.Exh.1), Declaration of Theresa Bland (Bland Declaration) with copies of income tax returns as exhibits (Gov.Exh.2), and Deposition of John P. Sgarlat dated April 26, 2001 (Sgarlat Depo.) (Gov.Exh.3).

In opposition to Government's Motion, Debtor contends there are genuine issues of material fact concerning the claim of the Government that the returns have not been filed at all for the tax years 1980 and 1986. Therefore, it is improper to dispose of the question of dischargeability for these tax years by summary judgment.

The facts as they appear from the record leave no doubt that the Debtor has no evidence whatsoever that he filed an income tax return for the tax year **1980.** Government's Exhibit 1, p. 7, indicates money amount of $0.00 next to the entry, "Return filed and tax assessed," Code 150, which indicates no tax return was filed by the taxpayer. Furthermore, in his deposition the Debtor testified that he does not recall filing the return and he has no documentation or any writing to prove he in fact filed the return for that year (Sgarlat

Depo., p. 53 lines 10–11, p. 54 lines 10–14). After an Internal Revenue Service (IRS) examination, and a stipulated Decision of the United States Tax Court entered February 28, 1995, assessments were made on April 14, 1995, of income tax in the amount of $111,145.00 together with the late filing penalty in the amount of $27,786.25, negligence penalty in the amount of $5,557.25 and interest computed based on substantial underpayments of tax attributable to tax motivated transactions in the amount of $534,547.58. A portion of the interest, $98,566.64, later was abated. There is a balance due for this tax year in excess of $876,263.40.

Concerning the tax year **1986** it is without dispute that the Debtor failed to file a Federal Income Tax Return (see Gov.'s Exh. 1, p. 17 indicating money amount of $0.00 next to the entry, "Return filed and tax assessed," Code 150, indicates no tax return was filed by the taxpayer; and Bland Declaration). On March 23, 1992, the Internal Revenue Service made an assessment for an income tax liability against the Debtor in the amount of $13,035.00 plus interest. On March 17th 1995, the Government made an additional assessment assessing a tax liability of $42,903.00 plus interest, making a balance due for the tax year 1986 with interest and penalties in excess of $187,799.20. Just as in the previous year, the Debtor stated in his deposition that he does not recall filing the return of this year and again Debtor has no records to substantiate that the return was in fact filed. (Sgarlat Depo., p. 54 lines 15–19).

Concerning the tax year **1987** the Debtor did not file a federal income tax return prior to the assessment of tax liability although after the assessment the Government prepared a substitute for return pursuant to 26 U.S.C. 6020(b)(SFR) and mailed a Notice of Deficiency on Novem-

ber 18, 1994. The assessment for this particular year was in the amount of $65,296.00, plus penalties for late filing and underpayment of estimated tax, plus interest. (Gov.Exh.1, p. 20). On February 8, 1995, Debtor filed Form 1040 claiming a self-employment tax liability for 1987 of $5,387.00 (Bland Declaration, Exh. C). On February 12, 1996, the penalty for underpayment of the estimated tax, $32,498.00 in tax and a portion of the interest later were abated. The current balance for this tax year is in excess of $123,989.83 (Gov.'s Exh. 1, p. 20).

For the tax year **1988**, Debtor failed to file a federal income tax return prior to the assessment of tax liabilities. Just as before, the Government filed an SFR after an examination and mailed a Notice of Deficiency on November 18, 1994 for income tax liability deficiency in the amount of $73,013.00, plus penalties for late filing and under payment of estimated tax, plus interest. Again, the Debtor filed a Form 1040 on or about February 8, 1995 claiming a self-employment tax liability for 1998 of $5,859.00. As a result, a portion of the interest and $26,507.00 in tax later was abated. There is a balance due for the 1988 tax year in excess of $162,693.89.

Concerning the tax year **1989** the Debtor again failed to file an income tax return prior to the assessment made by the Government. Again, the IRS prepared an SFR and mailed a Notice of Deficiency on November 18, 1994, and determined the tax liability in the amount of $274,197.00, plus penalties for late filing and underpayment of estimated tax, plus interest. After

the assessment had been made, the Debtor filed Form 1040, and as a result, the Government abated $4,579.00 in tax, leaving an unpaid balance for that year in excess of $780,809.58.

The Debtor again failed to file an income tax return for **1990** prior to the assessment of a tax liability. After, examination, the government prepared the SFR and mailed a Notice of Deficiency on November 18, 1994, in the amount of $315,570.00, penalties for late filing and underpayment of estimate tax, plus interest. Again, after the assessment was made, the Debtor filed a Form 1040 stating the tax liability for that year was $7,849.00 and was claiming an overpayment of tax of $9,418.00 (Bland Declaration, Exh. E). Of the assessed tax, the Government abated $6,101.00 leaving a balance for 1990 in excess of $895,100.10.

For tax year **1991**, Debtor again failed to file a return and the IRS conducted an examination, prepared an SFR, and a Notice of Deficiency which was mailed to Debtor November 18, 1994. This assessment was made in amount of $62,642.00, plus penalties for late filing and underpayment of estimated tax, plus interest. Again, after the assessment had been made, the Debtor filed a Form 1040 and listed a tax liability for 1991 of $7,577.00 and claimed an overpayment again of $2,847.00. Of the assessed tax, the Government abated $4,005.00 leaving a balance for 1991 in excess of $156,675.01.

The following chart displays a summary of the foregoing:

| TAX YEAR | SFR AND NOTICE OF DEFICIENCY | TAX RETURN FILED | BALANCE DUE ON LIABILITY ASSESSED |
|---|---|---|---|
| *1978 | No | Yes—April 6, 1981 | > $2,159,912.38 |
| *1979 | No | Yes—July 27, 1981 | > $ 435,561.27 |
| 1980 | No | No | > $ 876,263.40 |
| *1982 | No | Yes—July 31, 1995 | > $ 254,848.28 |

| | | | | |
|---|---|---|---|---|
| *1983 | No | Yes—July 31, 1995 | > $ | 5,431.44 |
| *1985 | No | Yes—July 31, 1995 | > $ | 170,250.40 |
| 1986 | No | No | > $ | 187,799.20 |
| 1987 | Yes—1994 | Yes—1995 | > $ | 123,989.83 |
| 1988 | Yes—1994 | Yes—1995 | > $ | 162,693.89 |
| 1989 | Yes—1994 | Yes—1995 | > $ | 780,809.58 |
| 1990 | Yes—1994 | Yes—1995 | > $ | 895,100.10 |
| 1991 | Yes—1994 | Yes—1995 | > $ | 156,675.01 |

*= Tax year not included in this Motion for Summary Judgment*

The Debtor in his deposition did not dispute the foregoing facts. He stated he had personal and substance abuse problems in the 1980's and 1990's but he worked, he knew he had income tax liability, and he knew that he was required to file tax returns concerning these years. During the years 1986–1989, the Debtor acted as a consultant to an entity known as National Paragon later known as National Media Corporation. Thereafter, he worked as a consultant for various businesses.

By letter dated January 17, 1996, the Government advised the Debtor of the abatements mentioned earlier, made pursuant to what the Government treated as informal claims for refund. These are the relevant facts in the above-captioned Adversary Proceeding which, according to the Government, are sufficient to prevail on its Motion for Summary Judgment.

■ A Section 727 discharge "does not discharge an individual from any debt ... for a tax ... with respect to which a return, if required ... was not filed." 11 U.S.C. § 523(a)(1)(B)(i). "The policy behind this subsection is that a debtor should not be permitted to discharge a tax liability based upon a required tax return that was never filed." *Cal. Franchise Tax Board v. Jackson (In re Jackson)*, 184 F.3d 1046, 1052 (9th Cir.1999). In dischargeability cases, the party objecting to discharge has the burden of proving applicability of an exception to discharge by a preponderance of the evidence. *Grogan v.*

*Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ The evidence is clear and this Court finds that Debtor did not file tax returns for the tax years 1980 and 1986. The IRS transcripts for these years show that no tax return was filed by a $0.00 amount listed under Code 150, "Return Filed and Tax Assessed." (Gov.Exh. 1, pp. 7 and 17). This evidence is not in dispute, and this Court finds that no tax returns were ever filed for these tax years. For the foregoing reasons, this Court is satisfied that the Debtor's tax liability for the years 1980 and 1986 are excepted from discharge by virtue of section 523(a)(1)(B)(i) as a matter of law and therefore, Government's Motion for Summary Judgment as to these years should be granted.

■ Turning to the tax years 1987 – 1991 presents a different problem. The Debtor did file a Form 1040 for each of these years on February 8, 1995, albeit after the Government prepared SFR's and mailed a Notice of Deficiency on November 18, 1994, for each of these years in question. This leads to the ultimate question which is whether the Forms 1040 actually filed by Debtor, albeit after the Government prepared an SFR and made a deficiency assessment, are deemed to be "returns" for the purpose of determining the dischargeability of the taxes under § 523(a)(1).

The Internal Revenue Code (IRC) requires persons to file returns according to the forms and regulations prescribed by the Secretary of Treasury. 26 U.S.C. §§ 6011(a) and 6012. A person's failure to file a timely tax return may trigger a substitute for return (SFR) prepared by the IRS pursuant to IRC § 6020(b). Substitutes for returns or SFR's do not qualify as "returns" for purposes of § 523(a)(1)(B). *In re Bergstrom,* 949 F.2d 341, 343 (10th Cir.1991). The Bankruptcy Code does not define "return" under Section 523. However, for a filing with the IRS to constitute a "return," a document must: (1) purport to be a return; (2) be executed under penalties of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *See, e.g., Germantown Trust Co. v. Comm'r,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940); *In re Hatton,* 220 F.3d 1057, 1060–61 (9th Cir.2000); *United States v. Hindenlang (In re Hindenlang),* 164 F.3d 1029, 1033 (6th Cir.1999).

The Bankruptcy Court for the District of New Jersey recently determined as a matter of law that Forms 1040 filed untimely and after the IRS prepared substitutes for return did not qualify as "returns" for purposes of dischargeability because they were filed three years after the IRS made its assessment and because they had no effect on the tax liabilities for the years in issue; rather, they simply mirrored the SFRs. *Hetzler v. United States (In re Hetzler),* 262 B.R. 47 (Bankr.D.N.J.2001). For tax year 1991, Hetzler showed a tax due of $237 more than the IRS had calculated, which amount the IRS assessed and agreed was dischargeable when more than two years after filing the Forms 1040, the debtor filed a petition in bankruptcy.

The New Jersey court recognized that the debtor's post-assessment conduct may be relevant to the issue of the debtor's honest and reasonable attempt to comply with the tax laws. "For instance, the government's prima facie case could be defeated if the debtor shows that he was incapacitated for a period of time after a return was due, during which time an assessment by the IRS was made, and then attempted to comply as soon as he was able to do so." *In re Hetzler,* 262 B.R. at 54.

In applying the four-part test to this case, as they did in *Hindenlang,* there is no question that the Forms 1040 submitted by Debtor purported to be returns. Second, Debtor executed these Forms under penalty of perjury. Third, the Forms included all the data needed to calculate Debtor's tax liability. Finally, as in *Hindenlang, supra,* the issue then to be resolved is whether Debtor's Form 1040, filed after the IRS had made a formal assessment, "represent an honest and reasonable attempt to satisfy the requirements of the tax law." This in turn brings into consideration conflicting case law, especially the seminal case of *In re Hindenlang, supra,* when the Sixth Circuit held as a matter of law:

> [A] Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code. A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute "an honest and reasonable attempt to satisfy the requirements of the tax law." Once the government shows that a Form 1040 submitted after an assessment can serve no purpose under tax law, the government has met its burden.

*In re Hindenlang,* 164 F.3d at 1034.

This Court has also had occasion to consider this issue in *Olson v. United States (In re Olson),* 261 B.R. 752 (Bankr.

M.D.Fla.2001). In *Olson, supra,* this Court denied Debtor's Motion for Summary Judgment and granted Government's Motion for Summary Judgment. In doing so, this Court relied on *United States v. Hindenlang (In re Hindenlang),* which held that a substitute return is a nullity and is deemed to be a non-filed return; therefore, the return filed by the taxpayer after the Government assessed the taxes serves no purpose and should be disregarded. *In re Olson,* 261 B.R. at 753. This Court in *Olson* concluded that the liabilities of the Debtor for the years involved were within the exception of § 523(a)(1)(B)(i); therefore, they were nondischargeable.

Debtor contends that the reasoning of *In re Hindenlang* was incorrect and was expressly rejected by Judge Glenn in *Ralph v. United States (In re Ralph),* 258 B.R. 504 (Bankr.M.D.Fla.2000). In *Ralph,* Debtor Donna Ralph did not timely file tax returns for 1987, 1988 and 1989. The IRS prepared SFR's for those years pursuant to 26 U.S.C. § 6020(b). In 1991, the IRS mailed Notices of Deficiency to Debtor. Debtor did not file a petition in the United States Tax Court; therefore, tax liabilities were assessed in 1992. Debtor did not contact the IRS about the tax returns for 1987, 1988 and 1989 until 1995. Debtor testified that she filed Forms 1040EZ because the IRS initiated a program to encourage non-filers to file their tax returns by granting them leniency, and she had not filed timely because she did not have the money to pay the tax due. The Forms 1040EZ listed amounts that were almost identical to the amounts previously determined by the IRS.

In concluding that the United States did not meet its burden of proving the tax liabilities are excepted from discharge, the Bankruptcy Court relied on the Ninth Circuit Bankruptcy Appellate Panel in *In re Nunez,* 232 B.R. 778 (9th Cir. BAP 1999), which determined that the fourth prong of the four-pronged test whether the purported tax returns were an honest and reasonable attempt to comply with the tax laws, was a good faith inquiry. And that this good faith inquiry should focus on the debtor's intent at the time the returns are filed. *In re Ralph,* 258 B.R. at 509 (citing *In re Nunez,* 232 B.R. at 782–83).

Judge Glenn applied the reasoning in *In re Crawley,* 244 B.R. 121 (Bankr.N.D.Ill. 2000) stating that § 523(a)(1)(B)(i) does not distinguish between returns filed pre-assessment and those filed post-assessment. *Id.* at 127. Applying the same rationale that the Ninth Circuit Bankruptcy Appellate Panel used in *Nunez,* he concluded that the Form 1040s filed by the debtors were therefore "returns" for dischargeability purposes, since the debtors were not required to file the returns prior to assessment by the IRS. *In re Ralph,* 258 B.R. at 508. After considering the two lines of cases represented by *Hindenlang* and *Nunez,* Judge Glenn concluded that it is not appropriate to adopt a per se or absolute rule regarding Form 1040s filed after assessment of a tax by the IRS. *In re Ralph,* 258 B.R. at 509.

On August 16, 2001, Judge Glenn's ruling was reversed by Judge Kovachevich of the United States District Court for the Middle District of Florida. *United States v. Ralph,* 266 B.R. 217 (M.D.Fla.2001). The District Court found that the Bankruptcy Court's ruling was based on *In re Nunez,* which cites *In re Hatton,* 216 B.R. 278 (9th Cir. BAP 1997), a decision which was later reversed by the Ninth Circuit Court of Appeal. *In re Hatton,* 220 F.3d 1057 (9th Cir.2000) (holding the Debtor's belated acceptance of responsibility does not constitute an honest and reasonable attempt to comply with the requirements of the tax law when Debtor avoided paying

his taxes until the IRS left him with no other choice). Furthermore, the District Court concluded that the Appellant, IRS, met its burden of establishing that the Forms 1040EZ filed by Debtor after assessment served no purpose. Therefore, based on the facts of that case, the District Court reversed the decision of the Bankruptcy Court and found the tax liabilities of Debtor Donna Ralph to be nondischargeable.

Whether or not this Court accepts the proposition urged by the Government, that a return filed by taxpayer after the Government prepared an SFR and made the deficiency assessment is per se a nullity, the fact remains that from the record of this case, it clearly cannot be accepted that after years of not filing returns, the filing of these documents by Debtor on February 8, 1995, represents an honest and reasonable attempt of Debtor to satisfy the requirements of the tax law. For more than a decade, the Debtor never filed the required tax returns on time. For the reasons stated, this Court is satisfied that the liabilities for income tax and interest for the years 1987 – 1991 are within the exception of § 523(a)(1)(B)(i) and are nondischargeable. In light of the most recent decision of Judge Kovachevich reversing Judge Glenn's decision in *United States v. Ralph, supra*, this Court is satisfied that the liabilities for income tax and interest for the years 1987 – 1991 should be excepted from discharge as a matter of law.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Government's Motion for Summary Judgment be, and the same is hereby, granted. Debtor's tax liabilities for income tax and interest for the years 1980 and 1986 – 1991 be, and the same are hereby, excepted from discharge as a matter of law pursuant to 11 U.S.C. § 523(a)(1)(B)(i). It is further

ORDERED, ADJUDGED AND DE-CREED that the penalties for the years involved be, and the same are hereby, dischargeable. It is further

ORDERED, ADJUDGED AND DE-CREED that with regard to tax years 1978, 1979, 1982 – 1985, 1992 and 1993, a pretrial conference is hereby scheduled before the undersigned in Courtroom 9A, Samuel M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida on Oct. 23, 2001 at 2:30 pm.